IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


JANICE M. FARR,                          )
                                         )
                    Plaintiff,           )     **CIVIL ACTION**
                                         )
v.                                       )     No. 07-1242-MLB
                                         )
HARTFORD LIFE AND ACCIDENT               )
INSURANCE COMPANY,                       )
                                         )
                    Defendant.           )
_____)


<u>**MEMORANDUM AND ORDER**</u>

This matter comes before the court on cross motions for summary judgment. Plaintiff Janice M. Farr filed a motion for summary judgment (Docs. 12, 13), which has been fully briefed (Docs. 17, 18) and is ripe for decision. Defendant Hartford Life and Accident Insurance Company ("Hartford") filed a motion for judgment on the administrative record (Docs. 14, 15), which has also been fully briefed (Docs. 16, 21) and is ripe for decision.

In addition, Hartford filed a motion to strike and for attorneys' fees (Docs. 19, 20), which relates to an exhibit (Doc. 18 Exh. 3) attached to plaintiff's reply brief; plaintiff responded (Doc. 22); and Hartford replied (Doc. 23).

This is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 <u>et seq.</u> ERISA governs employee benefit plans. 29 U.S.C. § 1003. Plaintiff brings her claim under 29 U.S.C. § 1132(a)(1)(B), which grants the right to bring a civil action under ERISA "to recover benefits due to [a plan participant] under the terms of his plan, to enforce [a plan

participant's] rights under the terms of the plan, or to clarify [a plan participant's] rights to future benefits under the terms of the plan."

## I.   FACTS

Plaintiff was at one time a participant in an employee welfare, long term disability plan ("LTD Plan") sponsored by her then employer, Via Christi Health System ("Via Christi"). Via Christi is the LTD Plan administrator; Hartford issued and delivered the LTD Plan; and Hartford has full discretion to determine the viability of claims for benefits under the LTD Plan. The LTD Plan grants this discretion to Hartford to determine benefit claims. It provides: "We have full discretion and authority to determine eligibly for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy."

The LTD Plan provided long-term disability benefits to qualified, eligible participants who satisfied all terms and conditions of the policy of insurance insuring the LTD Plan. The LTD Plan provides:

> Disability or Disabled means that during the Elimination Period and for the next 24 months you are prevented by:
>
> 1. accidental bodily injury;
>
> 2. sickness;
>
> 3. Mental Illness;
>
> 4. Substance Abuse; or
>
> 5. pregnancy,
>
> from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings.

-2-

> After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation.
>
> Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation does not alone mean that you are Disabled.

The LTD Plan defines "Any Occupation" as:

> Any Occupation means an occupation for which you are qualified by education, training or experience, and that has an earnings potential greater than an amount equal to the lesser of the product of your Indexed Pre-disability Earnings and the Benefit Percentage and the Maximum Monthly Benefit shown in the Schedule of Insurance.

While an employee of Via Christi, plaintiff became unable to perform one or more of the essential duties of her occupation, and she last worked on July 12, 2004. As of her last day at work, plaintiff's "Pre-Disability Earnings" were $4333.33 per month. Plaintiff submitted a claim for benefits to Hartford on October 22, 2004. The LTD Plan provides for an "elimination period" of ninety days, during which plaintiff did not receive benefits. Hartford approved plaintiff's claim for benefits on December 6, 2004; it paid benefits for twenty-four months during the "own occupation" period, from October 15, 2004 through November 30, 2006.

Hartford then requested information from plaintiff to determine whether plaintiff qualified for "any occupation" benefits under the LTD Plan. Hartford asked plaintiff: "Please list the name(s), address(es) and telephone numbers of any physicians that you have consulted and/or been treated by within the last 18 months." Plaintiff represented to Hartford that she had been treated by Dr. Georgia Ohlberg ("Dr. Ohlberg") in the eighteen months prior to May

-3-

1, 2006, and also informed Hartford that "prior physicians have been listed on prior forms.  No change."  In other portions of the administrative record, it shows that a Dr. Littell last saw plaintiff in August 2004, Dr. Mills last saw plaintiff in September 2004, and Dr. Fields last saw plaintiff in December 2004.  In addition, there is no indication in the administrative record of plaintiff advising Hartford that any physician other than Dr. Ohlberg treated her subsequent to May 1, 2006.[1]

Dr. Ohlberg submitted to Hartford an "Attending Physicians Statement" regarding plaintiff; she was the only treating provider to submit an attending physician statement.  In a February 13, 2006, Physical Capacities Evaluation ("PCE") completed by Dr. Ohlberg, the doctor concluded that plaintiff was capable of handling, fingering, and feeling constantly.  A copy of Dr. Ohlberg's PCE was provided to plaintiff.[2]  Plaintiff never submitted to Hartford any document signed by Dr. Ohlberg after February 13, 2006 in which Dr. Ohlberg expressed an opinion contrary to her February 13, 2006 determination that plaintiff was capable of handling, fingering and feeling "constantly."

Dr. Joseph E. Tuthill ("Dr. Tuthill"), a medical doctor specializing in internal medicine, reviewed plaintiff's medical records from December 2, 2002 to July 27, 2006 and spoke with Dr. Ohlberg.  Dr. Tuthill concluded in September 2006: 1) his medical

---

[1]   As discussed _infra_, Dr. Ohlberg is a chiropractor, not a "physician."  Plaintiff, a nurse, does not claim confusion regarding the difference between MDs, DOs, and chiropractors, so the court, except where necessary, will use "Dr." to include Ohlberg.

[2]   The entire administrative record was provided to plaintiff on August 15, 2006 and on June 22, 2007.

-4-

opinion was that plaintiff was capable of consistently performing the physical abilities outlined by Dr. Ohlberg on the PCE of February 13, 2006; 2) based on his review of the submitted documents, it was his medical opinion, with a reasonable degree of medical certainty, that plaintiff was not restricted from performing full-time work; and 3) in his opinion, based on the information he had received, there were no medically supported restrictions.

In October 2006, Dr. Michael H. Munhall ("Dr. Munhall"), a medical doctor specializing in physical medicine and rehabilitation performed an independent medical examination of plaintiff.   Dr. Munhall submitted the report of his examination, which provided an expert opinion of plaintiff's physical capacities, to Hartford.   Dr. Munhall's original report, dated October 5, 2006, stated that plaintiff could return to work "without restriction" but then specifically stated that plaintiff could handle, finger, and feel only "occasionally."   An email from the nurse in Dr. Munhall's organization who was reviewing his report before sending it to Hartford, indicates that the nurse questioned Dr. Munhall's conclusions regarding handling, fingering, and feeling.   A "corrected version," transmitted to Hartford on October 12, 2006, showed that Dr. Munhall's changed his opinion regarding handling, fingering, and feeling to "frequently." Regardless of his opinion regarding handling, fingering, and feeling, throughout his involvement, Dr. Munhall concluded that plaintiff had the capacity "to work full time at a sedentary level."   Dr. Munhall's report was provided to Dr. Ohlberg, although it is unknown whether it was the original or corrected version that was provided to her.

An employability analysis report completed in November 2006

determined that plaintiff "possesses the transferable skills required to perform 15 different occupations." On November 27, 2006, Hartford advised plaintiff that she did not qualify for continuing disability benefits under the "any occupation" standard of the LTD Plan. Plaintiff stopped receiving LTD Plan benefits as of that date. Hartford's denial was subject to administrative review.

On May 15, 2007, plaintiff appealed Hartford's November 27, 2006 determination. In the appeal, plaintiff stated: "If you obtain new evidence during your review, please provide an opportunity for Ms. Farr to respond to that new evidence before you make your final decision." During July 2007, Dr. Phillip Marion ("Dr. Marion"), a medical doctor specializing in physical medicine and rehabilitation, reviewed plaintiff's medical records and spoke with Dr. Ohlberg. On July 19, 2007, Dr. Marion submitted a report to Hartford, which reported:

> • The case was discussed with Dr. Ohlberg on 7/18/2007. She stated she has not seen the patient for approximately two months. She indicated the patient continues to complain of chronic pain of uncertain etiology. She agreed the patient is functionally capable of working at a light duty or sedentary occupational level.
>
> • Based on the conversation with Dr. Ohlberg and review of the medical records, Ms. Farr has not been physically precluded from performing a sedentary to light occupation beyond 11/2006.

Plaintiff states that Hartford did not provide Dr. Marion's report to plaintiff until after plaintiff filed her lawsuit, but cites no record support for this statement.

On August 6, 2007, Adling and Associates submitted to Hartford a report of the labor market survey it had conducted. The labor

market survey reported five jobs within the occupations identified in the November 2006 employability analysis report, and within the Wichita metropolitan statistical area, that paid an entry level salary of $16.18 or higher.[3]  Hartford provided a copy of this report to plaintiff, but it is disputed <u>when</u> the report was provided to plaintiff.  Plaintiff claims she did not receive a copy of the report "until after this lawsuit was filed" on August 17, 2007.  Hartford states that "it did not provide a copy of the [report] prior to August 8, 2007."

By letter dated August 8, 2007, Hartford advised plaintiff that it was affirming its denial of benefits.  In the August 8, 2007 denial letter, Hartford listed five specific occupations within the Wichita, Kansas area which it considered were within plaintiff's capabilities and which exceeded the applicable salary baseline, thus precluding "any occupation" benefits under the LTD Plan.

## II.  MOTION TO STRIKE

Hartford filed a motion to strike an exhibit to plaintiff's reply brief in support of plaintiff's motion for summary judgment.  (Doc. 19.)  That exhibit is a psychological assessment of plaintiff, prepared in April 2008.  (<u>See</u> Doc. 18 Exh. 3.)  Hartford moves the court to strike the exhibit, arguing that the court, when reviewing a determination under ERISA, may only consider the materials that were in the administrative record at the time Hartford made its

---

[3]  In its initial denial letter from November 27, 2006, Hartford had identified occupations it believed plaintiff could perform and earn the applicable salary baseline.  One of these general occupations was that of a nurse; the August 2007 denial letter identified specific nursing jobs plaintiff could perform that offered the applicable salary baseline.

determination. Hartford then points out that the April 2008 psychological assessment was not prepared until eight months after Hartford made its final administrative decision. (Docs. 19, 20.)

"In reviewing a plan administrator's decision under the arbitrary and capricious standard, [federal courts] are limited to the administrative record--the materials compiled by the administrator in the course of making his decision." Allison v. UNUM Life Ins. Co. of Am., 381 F.3d 1015, 1021 (10th Cir. 2004) (internal quotation omitted); see also Chambers v. Fammily Health Plan Corp., 100 F.3d 818, 823-24 (10th Cir. 1996) (upholding decision of district court to not consider evidence upon judicial review under the arbitrary and capricious standard that was not submitted to the plan administrator, citing Sandoval v. Aetna Life & Cas. Ins. Co, 967 F.2d 377 (10th Cir. 1992)). Plaintiff agrees that the administrative record was closed in this case in August 2007, when Hartford made its final administrative decision. The psychological assessment was completed in April 2008. Plaintiff acknowledges that the psychological assessment was not in the administrative record, and that it could not have been in the record, because it was not created until after the record was closed. (Doc. 22 at 1-2.)

Plaintiff agrees that "the administrative record may not be supplemented after [Hartford] made its final administrative decision" and also agrees that the exhibit "may not be added to the administrative record, for the purpose of determining whether Hartford's denial on the merits of [plaintiff]'s claim is arbitrary or capricious." (Doc. 22 at 2.) Therefore, there is no dispute whether the court may consider this evidence in its review under the

-8-

arbitrary and capricious standard--the court may not do so.   See
Geddes v. United Staffing Alliance Employee Medical Plan, 469 F.3d
919, 927-28 (10th Cir. 2006) (finding error in district court for
considering outside evidence under arbitrary and capricious review).

Plaintiff contends, however, that the court "may consider
evidence which is not in the administrative record for the purpose of
determining whether the administrator's procedures were proper."
Plaintiff also argues that the court has "broad discretionary
authority" to take notice of "rebuttal evidence" to Hartford's
presentation of evidence outside the administrative record. (Doc. 22
at 2.)  Hartford stated, in its response to plaintiff's motion for
summary judgment, that plaintiff "was never treated by any
psychiatrist or psychologist for her supposed 'Major Depressive
Disorder.'"  (Doc. 17 at 6.)

Plaintiff offers no legal support for these arguments, and the
court has found none.  Regardless, both arguments are factually
incorrect.  The psychological assessment cannot be relevant to any
claim of failing to compile a complete record, because it was not
completed until eight months after the final denial decision was made.
It could not have been considered by Hartford in making its decision,
it simply did not exist at the time the decision was made.   In
addition, the psychological assessment is not "rebuttal evidence."
Hartford simply stated that plaintiff did not present evidence of any
psychological condition prior to the final decision being made.  The
psychological assessment does nothing to rebut that propounded
statement of fact.

Hartford's motion to strike is GRANTED.   The court will not

consider plaintiff's April 2008 psychological assessment in its analysis of the summary judgment motions now before it.

Hartford also requests its "reasonable attorneys' fees and costs associated with filing [its] motion," arguing that plaintiff has ignored "[c]lear, controlling and indisputable authority." (Doc. 20 at 4.) Plaintiff responds that she is following unspecified "current law." (Doc. 22 at 4.) The court finds that an award of attorneys' fees is warranted. Hartford's counsel shall submit a statement of fees and expenses on or before July 7, 2008. Plaintiff's counsel shall respond by July 14. If a hearing is required, it will be held soon thereafter. Otherwise, the amount of the award will be decided on the written submissions.

## III. MOTION FOR SUMMARY JUDGMENT

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be

-10-

resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

Even though the parties have filed cross-motions for summary judgment, the legal standard does not change. See United Wats, Inc. v. Cincinnati Ins. Co., 971 F. Supp. 1375, 1382 (D. Kan. 1997). It remains this court's sole objective to discern whether there are any disputes of material fact, see Harrison W. Corp. v. Gulf Oil Co., 662 F.2d 690, 692 (10th Cir. 1981), and the court will treat each motion separately. See Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000).

**A.   Standard of Review**

The Tenth Circuit has discussed the federal court's standard of review for a denial of benefits claim under ERISA:

> A denial of benefits covered by ERISA is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. If the benefit plan gives discretion to a plan administrator, then a decision denying benefits is typically reviewed under an arbitrary and capricious standard. Such review is limited to determining whether the interpretation of the plan was reasonable and made in good faith.
>
> If, however, a plan administrator operates under an inherent or proven conflict of interest or there is a serious procedural irregularity in the administrative process, it is necessary to adjust the standard of review. Effectively, this court has crafted a sliding scale approach where the reviewing court will always apply an arbitrary and capricious standard, but the court must decrease the level of deference given in

> proportion to the seriousness of the conflict.
> If a plaintiff can prove a serious conflict of
> interest or the existence of a serious procedural
> irregularity, then the burden shifts to the plan
> administrator to prove the reasonableness of its
> decision under the arbitrary and capricious
> standard. When the burden shifts in this manner,
> the plan administrator must demonstrate that its
> interpretation of the terms of the plan is
> reasonable and that its application of those
> terms to the claimant is supported by substantial
> evidence.

Flinders v. Workforce Stabilization Plan of Phillips Petrol. Co., 491 F.3d 1181, 1189-90 (10th Cir. 2007) (internal quotations and citations omitted); see also ; see also Metropolitan Life Ins. Co. v. Glenn, 554 U.S. ___, 2008 WL 2444796, at *8-9 (2008) (approving and implementing the "factor" approach to conflict of interest allegations in ERISA cases); Johnson v. Liberty Life Assur. Co. of Boston, No. 07-6115, 2008 WL 268290, at *4 (10th Cir. Jan. 31, 2008) (stating same).

"In applying the arbitrary and capricious standard, the decision will be upheld so long as it is predicated on a reasoned basis." Adamson v. UNUM Life Ins. Co. of Am., 455 F.3d 1209, 1212 (10th Cir. 2006). "[T]here is no requirement that the basis relied upon be the only logical one or even the superlative one. Accordingly, our review inquires whether the administrator's decision resides somewhere on a continuum of reasonableness-even if on the low end." Id. (internal quotation omitted).

There is no dispute that Hartford has discretionary authority to determine eligibility for benefits. Therefore, arbitrary and capricious review is proper. However, Hartford operates under an inherent conflict of interest, as both the administrator and insurer of the LTD Plan. The court will review Hartford's denial decision

-12-

under this "less deference" arbitrary and capricious standard.  The burden is on Hartford to prove the reasonableness of its denial under the arbitrary and capricious standard.  Hartford must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant's claim is supported by substantial evidence.

**B.  Application**

The court therefore applies arbitrary and capricious review to plaintiff's claim, and the burden rests on Hartford to show that there is substantial evidence supporting its denial of plaintiff's claim for long term disability benefits.  Plaintiff alleges the following seven bases for finding that Hartford's final decision denying her long term disability benefits was arbitrary and capricious.

**1.   Hartford Credited Dr. Ohlberg's Opinion but Ignored the Opinions of Drs. Fields, Littell, and Mills.**

Plaintiff first argues that it was a violation of 29 C.F.R. 2560.503-1(h)(3)(iii) for Hartford to credit "the professional opinion of the medical provider with the least medical credentials of those who had treated or examined [plaintiff] and the medical provider who was probably not competent by education and experience to comment on the disabling medical conditions [plaintiff] suffered."[4] (Doc. 13 at 9-11.)

_____

[4]   This argument is very disingenuous.  In many cases of this nature, the plaintiff's main complaint is that the findings and opinions of his or her treating medical provider have been ignored or not given proper weight in comparison with those of a one-time IME. Here, it is apparent that plaintiff's problem with Dr. Ohlberg is not with her "credentials" but rather that her opinions do not support plaintiff's case.  This is something which should have been considered before this case was filed.

The minimum requirements for employee-benefit-plan procedures pertaining to claims for benefits are described in 29 C.F.R. § 2560.503-1.  Subsection 2560.503-1(h)(3)(iii), deals with appeals of adverse benefit determinations, and requires that in the course of that appeal, the plan administrator consult with a "health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment."  This is exactly what Hartford did.  In its initial determination of "any occupation" benefits, Hartford consulted both Drs. Tuthill and Munhall.  Both are medical doctors.  Dr. Tuthill is an internal medicine specialist; Dr. Munhall is a physical medicine and rehabilitation specialist.  In reviewing plaintiff's appeal, Hartford obtained a medical determination from Dr. Marion, who is a medical doctor specializing in physical medicine and rehabilitation.  The fact that Dr. Ohlberg, plaintiff's choice for her treating provider, is a chiropractor is not relevant to whether Hartford followed section 2560.503-1(h)(3)(iii).

Plaintiff also claims that Hartford "ignored" the opinions of "several treating physicians" that Hartford was aware of.  Plaintiff also claims that the independent medical examiners, Drs. Marion and Tuthill, were restricted in their freedom to consult, because they were not informed that Drs. Fields, Littell, and Mills had at one time seen plaintiff.  (Doc. 13 at 9-11.)  These arguments are also not persuasive.

Plaintiff sought long term disability benefits from Hartford for the period beginning December 1, 2006.  The administrative record is clear that Drs. Fields, Littell, and Mills last saw plaintiff in December 2004, August 2004, and September 2004, respectively.  The

-14-

administrative record also shows that plaintiff submitted no record of treatment from these doctors which occurred after 2004. Plaintiff last saw these doctors a minimum of two years prior to her application for long term disability under the "any occupation" standard. In addition, plaintiff represented to Hartford that she had been treated by Dr. Ohlberg in the eighteen months prior to May 1, 2006 and that Dr. Ohlberg continued to treat her.

Hartford cannot be faulted for relying on Dr. Ohlberg as plaintiff's treating provider, because plaintiff never gave Hartford any contrary indication. Sandoval v. Aetna Life & Cas. Ins. Co., 967 F.2d 377, 381 (10th Cir. 1992) ("If a plan participant fails to bring evidence to the attention of the administrator, the participant cannot complain of the administrator's failure to consider this evidence."). In addition, these assertions by plaintiff do nothing to alter the reasonable basis for the denial of plaintiff's claim for "any occupation" benefits. Plaintiff's treating provider believed plaintiff was capable of maintaining a position where she could, among other things: sit for one to two hours at a time for up to four to five hours a day; stand for an hour at a time for up to two to three hours per day; walk for an hour at a time up to two to three hours a day; frequently lift up to twenty pounds and occasionally lift up to fifty pounds; and handle, finger and feel constantly. Hartford's reviewing medical examiners (Drs. Tuthill, Munhall, and Marion) generally concurred in these beliefs. All the evidence Hartford had before it supported Hartford's decision, and Hartford cannot be faulted for not pressing plaintiff for new information from doctors she had not seen in the previous two years. There is certainly

-15-

substantial evidence in the administrative record to support Hartford's determination.

**2.   Hartford Requested and Obtained a Change in the Functional Capacity Report from Dr. Munhall.**

In October 2006, Dr. Munhall performed an independent medical examination of plaintiff.  Dr. Munhall completed a report of his examination of plaintiff, which provided an expert opinion of plaintiff's physical capacities.  His original report, dated October 5, 2006, stated that plaintiff could return to work "without restriction" but then specifically stated that plaintiff could handle, finger, and feel only occasionally.  Clearly, these conclusions are not compatible.

Plaintiff argues that Hartford should have restrained Dr. Munhall from altering his original report, and that she should have been made aware of his change at the time of her appeal.  There are no facts, however, indicating that Dr. Munhall was coerced to change his report, that he did not feel the change was necessary or appropriate, or that Dr. Munhall's corrected version was not his full and complete opinion regarding plaintiff's medical condition and its effect on her ability to work.  There is simply no basis for plaintiff's contention that this unsupported factual scenario supports a finding that Hartford lacked substantial evidence to support its determination, and that its determination was unreasonable.

**3.   Incorrect Employability Analysis.**

Plaintiff next extends her argument regarding "handling, fingering, and feeling," by stating that the employability analysis performed for Hartford in November 2006 should have been based on

-16-

"occasional," rather than "frequent" handling, fingering, and feeling. The court has already determined, however, that there is reasonable, substantial evidence supporting Hartford's use of this criterion. Plaintiff's treating provider determined that plaintiff could perform these activities constantly, Dr. Munhall determined she could do so "frequently," and Dr. Tuthill determined plaintiff could work without restriction.  Hartford's use of "frequently" in its employability analysis is well supported by the administrative record.

**4.  Failure to Provide Administrative Record.**

Plaintiff then argues that a procedural error occurred, because she was not given, upon request in March 2007 for the complete administrative record, a copy of the "corrected version" of Dr. Munhall's report.  Subsection 2560.503-1(h)(2)(iii) requires that "a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits."

Plaintiff cites the case of Bangert Bros. Constr. Co., Inc. v. Kiewit Western Co., 310 F.3d 1278 (10th Cir. 2002), contending it is applicable to plaintiff's claim that Hartford "failed to timely disclose that it caused Dr. Munhall to alter his report." (Doc. 13 at 18.)  Bangert is a Tenth Circuit case, decided under Colorado state law.  Plaintiff cites it for its application of that Colorado law to a claim of fraudulent misrepresentation.  See Bangert, 310 F.3d at 1286.  Application of Colorado's elements of fraud is not applicable to this case, brought pursuant to a federal statutory and regulatory scheme.  In addition, the court has already determined that plaintiff has alleged no facts that could reasonably be construed toward a

finding that Hartford did anything other than clarify Dr. Munhall's conflicting conclusions.

Hartford contends that plaintiff was aware of Dr. Munhall's opinion that she could handle, finger and feel frequently, because in its November 2006 denial of benefits letter, Hartford stated Dr. Munhall's opinion was that "handling, fingering and feeling could be performed frequently." In addition, in May 2007, plaintiff's counsel acknowledged that Dr. Munhall's opinion was that plaintiff could handle, finger, and feel frequently. The administrative record provides support for Hartford's contentions.

The court finds that no serious procedural error occurred. Assuming plaintiff was not given the "corrected version" of Dr. Munhall's report, and was instead given the original version when she made her request in March 2007, it is clear that she had been told of, and had confirmed to Hartford, Dr. Munhall's corrected assessment. "Courts have also been willing to overlook administrators' failure to meet certain procedural requirements when the administrator has substantially complied with the regulations and the process as a whole fulfills the broader purposes of ERISA and its accompanying regulations." Gilbertson v. Allied Signal, Inc., 328 F.3d 625, 634 (10th Cir. 2003) (collecting cases); Grosvenor v. Qwest Communications Int'l, No. 05-4061, 2006 WL 2076804, at *4 (10th Cir. July 27, 2006) ("As we read Fought, the serious procedural irregularity included the lack of an independent review in a complex case where the plan administrator operated under an inherent conflict of interest and resisted discovery on that conflict. A serious procedural irregularity is not present every time a plan administrator comes to

-18-

a decision adverse to the claimant on conflicting evidence."). Plaintiff was informed of Dr. Munhall's opinion, and no serious procedural error occurred which would support a finding of arbitrary and capricious review.

**5. Repetitive Task Capability.**

Plaintiff again challenges Hartford's employability analysis, claiming that Hartford used an unrealistic assumption in the report that plaintiff could perform repetitive tasks because she had once been able to do so. Plaintiff argues that this finding is not reasonable because of Hartford's determination that she had qualified for "own occupation" short-term disability benefits. Hartford responds that plaintiff's argument is foreclosed, because she did not argue this point in the administrative proceedings.

The court may not consider new arguments, from either party, in its determination of plaintiff's claim:

> In reviewing a plan administrator's decision, [a court] may only consider the evidence and arguments that appear in the administrative record. This means that, when reviewing a plan administrator's decision to deny benefits, we consider only the rationale asserted by the plan administrator in the administrative record and determine whether the decision, based on the asserted rationale, was arbitrary and capricious. To determine whether a plan administrator considered and asserted a particular rationale, we look only to those rationales that were specifically articulated in the administrative record as the basis for denying a claim. . . . This is consistent with the converse rule that <u>a claimant may not urge new grounds outside the administrative record that would support the award of benefits.</u>

<u>Flinders</u>, 491 F.3d at 1190-91 (internal citations omitted) (emphasis added). Regardless, however, substantial evidence supports Hartford's

determination that plaintiff could perform repetitive tasks.  Drs. Tuthill and Marion came to this conclusion, which was affirmed subsequent to the employability analysis by Dr. Munhall.  This argument by plaintiff is without merit.

**6.  Sitting Capability.**

Plaintiff next argues that Dr. Munhall's conclusion that she could perform sedentary work is unsupported, because he also concluded that she could only sit for two hours at a time, for up to eight hours per day.  Plaintiff points out that the definition of sedentary requires sitting "most of the time."  Plaintiff argues: "Even if Ms. Farr can sit for two hours at a time and can sit for eight hours in one day, her work day would necessarily be longer than eight hours in order for her to have breaks between the two-hour sitting sessions."

Hartford responds that Dr. Munhall's findings fully support his opinion that plaintiff may work full time in a sedentary occupation. As Hartford points out, Dr. Munhall's finding that plaintiff <u>can</u> sit up to eight hours per day, does not mean that plaintiff would be <u>required</u>, in a sedentary position, to sit for eight hours per day. As even plaintiff admits, the word sedentary intimates that the employee sit "most" of the time, not all of the time they are at the position.  Plaintiff is capable for sitting two hours at a time, standing one hour at a time, and walking one hour at a time.  Many combinations are imaginable which would fulfill an eight hour sedentary occupation's workday.

Hartford's reliance on Dr. Munhall's report to deny plaintiff's claim for benefits was reasonable.  Dr. Munhall's conclusion that plaintiff could work full time at a sedentary position is fully

supported by his findings.  Dr. Munhall's report is just one piece of the substantial evidence that supports Hartford's denial of plaintiff's claim.

**7.  The Labor Market Survey.**

Finally, plaintiff contends that the labor market survey relied upon by Hartford was incorrect, based on its reliance on Drs. Munhall and Marion's reports.  As discussed above, Dr. Munhall concluded that plaintiff could work in a sedentary occupation.  Dr. Marion concluded plaintiff had no work restrictions.  Plaintiff contends these doctors' conclusions were incorrect, and therefore, the labor market survey, which computed starting wage information for the previously determined available positions identified in the employability analysis report, is also incorrect.

As discussed above, the court finds that it was reasonable for Hartford to rely on Dr. Munhall's report and his conclusion that plaintiff could work in a sedentary occupation.  It was also reasonable for Hartford to rely on Dr. Marion's report.  Plaintiff first faults Dr. Marion for only directly contacting Dr. Ohlberg, and not her prior providers.  As the court noted, however, the providers were no longer identified by plaintiff as current treating physicians and had last seen plaintiff over two and a half years prior to Dr. Marion's report.  Plaintiff then contends that Dr. Marion did not address all plaintiff's medical conditions in his report.  However, a review of the administrative record shows that Dr. Marion reported that "all medical records were viewed."

It was reasonable for Hartford to rely on the ultimate conclusions of Drs. Munhall and Marion.  As a result, it was

reasonable for Hartford to utilize those conclusions in the labor market survey.

## IV.   CONCLUSION

Plaintiff's motion for summary judgment (Doc. 12) is DENIED for the reasons stated more fully herein.  Defendant's motion for judgment on the administrative record (Doc. 14) is GRANTED for the reasons stated more fully herein.

Defendant's motion to strike and for attorneys' fees (Doc. 19) is GRANTED, as stated more fully herein.

The clerk is directed to enter judgment for defendant pursuant to Rule 58.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp, 810 F. Supp. 1172, 1174 (1992).  The response to any motion for reconsideration shall not exceed 3 double-spaced pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this    28th    day of June, 2008, at Wichita, Kansas.


                                    s/Monti Belot
                                    Monti L. Belot
                                    UNITED STATES DISTRICT JUDGE